## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **AUXILIOR CAPITAL PARTNERS, INC.** | **CIVIL ACTION NO. _____** |
| **Plaintiff,** | |
| **vs.** | **SECTION _____** |
| **AHA HUTS, LLC,** | |
| **THE PENITIGRI GROUP LLC, AND** | **JUDGE _____** |
| **LISA ALBERT,** | |
| **Defendants.** | **MAGISTRATE JUDGE _____** |

## COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes AUXILIOR CAPITAL PARTNERS, INC. ("Auxilior," "Lender," or "Plaintiff"), which respectfully represents as follows:

### I.    PARTIES

1.    Plaintiff, Auxilior, is a Delaware Corporation, whose principal place of business is in Plymouth Meeting, Pennsylvania. As such, Auxilior is a citizen of the State of Delaware and the Commonwealth of Pennsylvania.

2.    Defendant, Lisa Albert, is an individual of the full age of majority and a citizen of the State of Georgia.

3.    Defendant, The Penitigri Group LLC ("Penitigri Group"), is a limited liability company comprised of one member, Lisa Albert, who is a citizen of the State of Georgia. Therefore, Penitigri Group is a citizen of the State of Georgia.

4.    Defendant, AHA Huts, LLC ("AHA" or "Borrower"), is a limited liability company comprised of two members: the defendants, Lisa Albert and Penitigri Group. As noted in the

preceding paragraphs, both Lisa Albert and Penitigri Group are citizens of the State of Georgia. Therefore, AHA is a citizen of the State of Georgia.

## II.    JURISDICTION AND VENUE

5.    This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and complete diversity exists between the Plaintiff—a citizen of the State of Delaware and the Commonwealth of Pennsylvania —and the Defendants—each of whom is a citizen of the State of Georgia.

6.    Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a) because this is the district in which a substantial part of the property that is the subject of the action is situated.

## III.    GENERAL ALLEGATIONS

### A.    The Loan and Security Agreement

7.    Auxilior is the holder for value of that certain Loan and Security Agreement, Agreement No. 1002571, dated August 31, 2022 (the "Loan Agreement") by and between Auxilior, as lender, and AHA, as borrower, and certain other loan documents from time to time executed and delivered to Auxilior in connection with the Loan (collectively, the "Loan Documents"), pursuant to which Auxilior agreed to make, and AHA agreed to accept, the loan as more particularly described and subject to the terms and conditions set forth therein (the "Loan").

### B.    The Promissory Notes

8.    Auxilior is the owner and holder of that certain Promissory Note for Agreement No. 1002571-001 dated August 31, 2022 (the "001 Note") in the original principal amount of $5,650,000.00 executed by AHA in favor of, and payable to the order of, Auxilior, evidencing the Loan with interest thereon and payable as provided in the Note and in the Loan Agreement.

9.    The 001 Note has a stated interest rate of 7.15% per annum, calculated on the basis of a 360-day year and a 30-day month.

10.    The 001 Note provides that upon the occurrence of an event of default, interest shall accrue at default rate that consists of the stated interest rate plus an additional 5% (for a total interest rate of 12.15% after an event of default on the 001 Note).

11.    The 001 Note is payable on the following terms:

(a) one payment of accrued and unpaid interest on the principal advances, to be paid on October 15, 2022,

(b) commencing on October 15, 2022, and on the first day of each month thereafter, for a period of 59 months, payments of $66,235.66 each, and

(c) unless sooner paid, a final lump sum payment in the estimated amount of $3,399,342.46, to be paid on the maturity date of September 15, 2027.

12.    Auxilior is the owner and holder of that certain Promissory Note for Agreement No. 1002571-002 dated October 31, 2022 (the "002 Note") in the original principal amount of $63,800.00 executed by AHA in favor of, and payable to the order of, Auxilior, evidencing the Loan with interest thereon and payable as provided in the Note and in the Loan Agreement.

13.    The 002 Note has a stated interest rate of 8.10% per annum, calculated on the basis of a 360-day year and a 30-day month.

14.    The 002 Note provides that upon the occurrence of an event of default, interest shall accrue at default rate that consists of the stated interest rate plus an additional 5% (for a total interest rate of 13.10% after an event of default on the 001 Note).

15.    The 002 Note is payable on the following terms:

(a) commencing on December 15, 2022, and on the fifteenth day of each month thereafter, for a period of 57 months, payments of $780.07 each, and

(b) unless sooner paid, a final lump sum payment in the estimated amount of $40,192.67, to be paid on the maturity date of September 15, 2027.

## C.    The Security Agreement

16.    The Loan, including, without limitation, the obligations of AHA to Auxilior evidenced by the 001 Note and the 002 Note, and the Secured Obligations, as defined below, are secured by, among other things, the Loan Agreement.

17.    AHA executed the Loan Agreement through its duly authorized Member and President, Lisa Albert.

18.    Section 1(A)(7) of the Loan Agreement defined the "Collateral" as follows:

7.    **"Collateral"** shall mean all existing and after-acquired property of Borrower of any nature, located at or used in connection with the restaurant operations at the existing as well as any newly-developed and/or acquired Sites, including, without limitation:

(i) All present and future Accounts, contract rights, Chattel Paper, Instruments and Documents, and all other rights to the payment of money, whether or not yet earned, for services rendered or Goods sold or furnished by Borrower or otherwise, together with: (a) all Goods, the sale or other furnishing of which shall be given or may give rise to any of the foregoing; (b) all of Borrower's rights as a consignor, consignee, unpaid

vendor, or other lien or in connection therewith, including stoppage in transit, set-off: detinue, replevin and reclamation; (c) all General Intangibles related thereto; (d) all guaranties, mortgages, security interests, assignments, and other encumbrances on real or personal property, leases, and other agreements or property securing or relating to any Accounts; (e) choses in-action, claims and judgments; (f) any returned or unearned premiums, which may be due upon cancellation of any insurance policies; (g) all present and future machinery, equipment, furniture, trade fixtures, appliances, motor vehicles, tools, jigs, molds and other articles of tangible personal property of every type, together with all parts, supplies, substitutions, accretions, accessions, attachments, devices, accessories, components and replacements thereof, and all manuals of operation, maintenance or repair, and all software related thereto (collectively, the *"Equipment"*);

(h) all present and future Inventory of Borrower and Borrower's cash and accounts receivables; (t) all present and future General Intangibles, licenses, permits, approvals, software and computer programs, license rights, royalties, trade secrets, methods, processes, know-how, formulas, drawings, specifications, descriptions, label designs, plans, and blueprints; (j) all of Borrower's Commercial Tort Claims; (k) all present and future files, books and records, invoices, bills, certificates or documents of ownership, bills of sale, business papers, correspondence, and all copies and reproductions of all the foregoing, relating to the collateral described in the preceding paragraphs; and (l) all products and Proceeds (including, without limitation, insurance proceeds) of the foregoing and all supporting obligations related thereto. Notwithstanding the foregoing, the security interest in Borrower's rights in and to the Pizza Hut Franchise Agreements for the Sites shall be limited to the proceeds or other consideration from the sale, transfer, or other disposition of any such Franchise Agreement, or Borrower's rights therein, subject to the rights of Franchisor, to the extent a security interest may be granted pursuant to the terms of the Pizza Hut Franchise Agreements.

19.    Section 1(A)(36) of the Loan Agreement defines "Sites" to mean "the Pizza Hut restaurants which are owned and/or operated by the Borrower, as listed on Schedule 1 hereto."

20.    Schedule 1 of the Loan Agreement identifies the following Sites, all of which are physically situated in Louisiana:

**SCHEDULE 1: Site List**

| Store Number | Address | City | State | Zip | Concept | Sub Concept |
|---|---|---|---|---|---|---|
| 34320 | 1665 Highway 3125 | Gramercy | LA | 70052 | PWST | DELCO |
| 34321 | 150 Belle Terre Blvd. | La Place | LA | 70068 | PWST | DELCO |
| 34322 | 317 W Esplanade Ave | Kenner | LA | 70065 | PWST | DELCO |
| 34323 | 12439 Hwy US 90 | Luling | LA | 70070 | PWST | DELCO |
| 34324 | 6302 West Park Blvd. | Houma | LA | 70364 | PWST | DELCO |
| 34325 | 1001 Highway 1 South | Donaldsonville | LA | 70346 | PWST | DELCO |
| 34326 | 4882 Highway 1 | Mathews | LA | 70375 | PWST | DELCO |
| 34327 | 1970 Ormond Blvd. | Destrehan | LA | 70047 | PWST | DELCO |
| 34328 | 16258 W Main Street | Cut Off | LA | 70345 | PWST | DELCO |
| 34329 | 124 Rienzi Drive | Thibodaux | LA | 70301 | PWST | DELCO |
| 34330 | 1232 St Charles St | Houma | LA | 70360 | PWST | DELCO |
| 34331 | 4783 Highway 308 | Napoleonville | LA | 70390 | PWST | DELCO |
| 34332 | 6011 Hwy 182 | Morgan City | LA | 70380 | PWST | DELCO |
| 34335 | 1949 Prospect Blvd | Houma | LA | 70363 | PWST | DELCO |
| 34336 | 612 Catherine St | Patterson | LA | 70392 | PWST | DELCO |

21.     Section 1(A)(29) of the Loan Agreement defines the "Obligations" as follows:

29.     **"Obligations"** shall mean (i) all indebtedness evidenced by and according to the terms of the Notes, this Agreement, and the other Loan Documents, including, without limitation, all interest, fees, costs and expenses accrued or incurred after the filing of any petition under any bankruptcy or insolvency law (regardless of whether allowed or allowable in whole or in part as a claim therein); (ii) all sums hereafter loaned, paid out, expended, or advanced by Lender under the terms of this Agreement or otherwise arising under the Loan Documents, to or for the account of Borrower, together with interest thereon; (iii) all extensions or renewals of the Notes, this Agreement, and the other Loan Documents evidencing sums hereafter loaned, paid out, expended or advanced by Lender, its successors or assigns, to or for the account of Borrower; and (iv) the discharge and performance of all agreements and obligations under the Notes, this Agreement, and the other Loan Documents.

22.     In Section 5(A) of the Loan Agreement AHA collaterally pledged, assigned, transferred, conveyed, mortgaged, delivered, and granted to Auxilior a first priority security interest in the Collateral as security for the full and timely payment and performance of all obligations, indebtedness, and liabilities of AHA to Auxilior, including without limitation the Obligations, whether now existing or hereafter incurred, matured or unmatured, direct or indirect, primary or secondary, related or unrelated or due or to become due, arising under the Loan Documents or any other documents, instruments, or agreements among AHA and Auxilior, and any extensions, modifications, substitutions, increases and renewals thereof, and substitutions therefor.

23.     In Section 5(A) of the Loan Agreement AHA also agreed that the Loan Agreement shall constitute a Security Agreement within the meaning of the UCC, and AHA being the Debtor and Auxilior being the Secured Party.

24.     Auxilior's security interests granted in the Loan Agreement on the personal and movable property, including, without limitation, the Collateral set forth in the Loan Agreement, was perfected by the filing of that certain UCC-1 Financing Statement on August 31, 2022, with the Pennsylvania Department of State as UCC Filing No. 2022083101776.

**25.**    Section 10(A)(1) of the Loan Agreement states, in pertinent part, that the failure of AHA to pay any amount of principal or interest on any note, or any fee or other sums payable hereunder, or any other Obligations, on or before the 5th day after such payment is due shall constitute an "Event of Default" of the Loan Agreement.

**26.**    Further, Section 10(B) of the Loan Agreement provides, in pertinent part, as follows:

B.    **Remedies.** At the option of Lender, upon the occurrence and during the continuance of an Event of Default:

1.    The entire unpaid principal of the Loan, all other Obligations, or any part thereof, all interest accrued thereon all fees due hereunder and all other obligations of Borrower to Lender hereunder or under any other Loan Documents will become immediately due and payable without any further demand or notice; provided, however, that if the Event of Default is due to a Bankruptcy proceeding filed by or against Borrower or any Guarantor, the principal balance of the Loan, and all unpaid interest accrued thereon and any other amounts due hereunder shall automatically become due and payable in full without presentment, demand or notice of any kind, all of which are hereby waived by Borrower, and/or

2.    Lender may increase the interest rate on the Loan to the applicable Default Rate set forth in the Notes, without notice; and/or

3.    Lender may enter any premises occupied by Borrower or appoint a receiver: in compliance with applicable laws, and take possession of the Collateral and any records relating thereto as permitted under applicable laws; and/or

4.    Lender may exercise each and every right and remedy granted to it under the Loan Documents, under the Uniform Commercial Code and under any other applicable law or at equity.

**27.**    In sum, under Section 10(B) of the Loan Agreement, if an Event of Default has occurred and is continuing, Auxilior may declare the entire unpaid principal balance of the loan as due, increase the interest rate to the Default Rate as defined in the 001 Note and the 002 Note, appoint a receiver (a/k/a Keeper under Louisiana law) take and maintain full control of the Collateral and any records relating thereto, and exercise each and every right granted to it under the Loan Documents and any applicable law.

**28.**    Furthermore, La. Rev. Stat. ann. 9:5136, *et seq.,* expressly permits the appointment of a keeper.

**D.    The Guaranty Agreements**

29.    To guaranty the obligations of AHA to Auxilior in connection with the Loan, Lisa Albert executed that certain Personal Guaranty dated August 31, 2022, in favor of Auxilior (the "Albert Guaranty"), pursuant to which Lisa Albert is obligated irrevocably, absolutely, and unconditionally, solidarily, jointly and severally, for the full and prompt payment of all amounts payable under the Loan Documents.

30.    To guaranty the obligations of AHA to Auxilior in connection with the Loan, Penitigri Group executed that certain Corporate Guaranty dated August 31, 2022, in favor of Auxilior (the "Penitigri Guaranty"), pursuant to which Penitigri Group is obligated irrevocably, absolutely, and unconditionally, solidarily, jointly and severally, for the full and prompt payment of all amounts payable under the Loan Documents.

**E.    The Defaults**

31.    AHA, and in turn, Lisa Albert and Penitigri Group, as guarantors, are in default under the terms and conditions of the Loan Agreement, Note, and the Albert Guaranty and Penitigri Guaranty because AHA has failed to, among other things, pay all required monthly payments due under the 001 Note.

32.    As a result of the aforementioned defaults, by letters dated September 5, 2024, and September 16, 2024, Auxilior placed AHA in default, and confirmed the assessment of default interest on the 001 Note and the 002 Note.

33.    Lisa Albert and Penitigri Group were copied with those letters.

34.    Additionally, by letter dated and May 2, 2025, Auxilior confirmed that AHA was in default of the 001 Note and the 002 Note, and that Auxilior may pursue any right under the Loan Documents without further notice.

35. Lisa Albert and Penitigri Group were also copied with that letter.

36. Despite these notices of default, AHA, and Lisa Albert and Penitigri Group, as guarantors, have failed to pay all amounts due under the 001 Note and the 002 Note, and, in turn, the Loan Agreement, the Albert Guaranty, and the Penitigri Guaranty.

37. Consequently, AHA is in default under the Loan Agreement, the 001 Note and the 002 Note, and, in turn, Lisa Albert is in default under the Albert Guaranty, and Penitigri Group is in default under the Penitigri Guaranty.

**F.    Attorneys' Fees**

38. In Section 10(F)(2) of the Loan Agreement, AHA agreed to pay Auxilior's losses, costs, and expenses in connection with the enforcement, protection, and preservation of Auxilior's rights or remedies under the Loan Documents, "including without limitation court costs, reasonable attorney's fees, including without limitation, reasonable attorney's fees incurred post judgment, and reasonable expenses of accountants and appraisers."

39. Auxilior has engaged counsel to (a) enforce Auxilior's rights under the Loan Agreement, the 001 Note, the 002 Note, the Albert Guaranty, and the Penitigri Guaranty, and (b) institute these proceedings to collect the amounts due thereunder, and seek recognition of and enforce, the Loan Agreement, including the security interests thereunder.

40. Accordingly, Auxilior is entitled to recover from AHA, Lisa Albert, and Penitigri Groups the reasonable attorneys' fees, court costs and other expenses that it incurs in connection with its collection efforts, including the filing and prosecution of these proceedings.

**G.    The Amounts Due**

41. The amount due from, and unpaid by, AHA, and, in turn, Lisa Albert and Penitigri Groups, as Guarantors, to Auxilior under the 001 Note, the 002 Note, the Albert Guaranty, and the

Penitigri Guaranty, totals $5,891,669.78 as of May 20, 2025, calculated as follows (not including

attorney's fees):

The 001 Note – Past Due Balance
- 3 Payments of $66,235.66 .......... $ 198,706.98
- 7 Late Fees of $3,311.78 .......... $ 23,182.46
- 1 NSF Fee .......... $ 30.00

       Sub-Total .......... $ 221,919.44

The 001 Note – Payoff Balance
- Principal .......... $5,283,016.56
- Contract Interest .......... $ 150,680.62
- Default Interest .......... $ 43,647.99
- Late Fees .......... $ 29,712.68
- Prepayment Penalty .......... $ 105,660.33
- NSF Fee .......... $ 60.00

       Sub-Total: .......... $5,612,778.18

The 002 Note – Payoff Balance
- Principal .......... $ 52,487.18
- Contract Interest .......... $ 94.49
- Default Interest .......... $ 3,340.74
- Prepayment Penalty .......... $ 1,049.75

       Sub-Total: .......... $ 56,972.16

42.    Interest is continuing to accrue on the 001 Note at the default rate specified in the 001 Note from May 21, 2025, until all of the obligations of AHA, and Lisa Albert and Penitigri Group, as Guarantors, to Auxilior on the 001 Note are paid in full.

43.    Interest is continuing to accrue on the 002 Note at the default rate specified in the 002 Note from May 21, 2025, until all of the obligations of AHA, and Lisa Albert and Penitigri Group, as Guarantors, to Auxilior on the 002 Note are paid in full.

44.    Additionally, attorney's fees have accrued, and will continue to accrue during the pendency of this action, until all of the obligations of AHA, and Lisa Albert and Penitigri Group, as Guarantors, to Auxilior on the 001 Note and the 002 Note are paid in full.

## IV.   APPOINTMENT OF RECEIVER

45.   As noted above, under Section 10(B) of the Loan Agreement, if an Event of Default has occurred and is continuing, Auxilior has the right to appoint a receiver (a/k/a Keeper under Louisiana law) take and maintain full control of the Collateral and any records relating thereto, and exercise each and every right granted to it under the Loan Documents and any applicable law.

46.   Because it is within the power of AHA to conceal, dispose of, or waste the Collateral, Auxilior, pursuant to Rule 66 of the Federal Rules of Civil Procedure, will file a separate motion seeking to appoint a Receiver (a/k/a Keeper under Louisiana law) take and maintain full control of the Collateral and any records relating thereto.

## PRAYER

**WHEREFORE**, Auxilior Capital Partners, Inc., prays for judgment in its favor as follows:

1.   against AHA Huts, LLC, Lisa Albert, and Penitigri Group LLC, jointly and *in solido*, awarding Auxilior:

a.   all amounts due under the 001 Note, including past due installment payments, past due late fees, NSF fees, the principal balance, contractual interest, default interest that has accrued and will continue to accrue until the 001 Note is paid in full, late fees, and prepayment penalties;

b.   all amounts due under the 002 Note, including the principal balance, contractual interest, default interest that has accrued and will continue to accrue until the 002 Note is paid in full, and prepayment penalties; and

c.   all attorney's fees have accrued, and will continue to accrue during the pendency of this action, until all of the obligations of AHA, and Lisa Albert and Penitigri

Group, as Guarantors, to Auxilior on the 001 Note and the 002 Note are paid in full;

*and*

2.    in its favor and against AHA Huts, LLC, appointing a keeper for the Collateral; *and*

3.    all other and further relief as is just and equitable.

Respectfully submitted,

*/s/David M. Kerth*

**David M. Kerth (LA Bar No. 25126)**
**Jones Walker LLP**
445 North Blvd.
Suite 800
Baton Rouge, LA 70802
Telephone: (225) 248-2048
Facsimile: (225) 248-3048
dkerth@joneswalker.com

and

**Graham H. Ryan (LA Bar No. 34070)**
**Jones Walker LLP**
201 St. Charles Avenue, Suite 5100
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8370
Telefax: (504) 589-8370
gryan@joneswalker.com

***Counsel for the Plaintiff,***
***Auxilior Capital Partners, Inc.***